**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DAVID JAMES FISTER, on behalf of themselves and others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT – CLASS ACTION** |
| | : | |
| MASSCHUSETTS INSTITUTE OF TECHNOLOGY, a Massachusetts corporation, and EMERITUS INSTITUTE OF MANAGEMENT PTE. LTD. | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

Plaintiff DAVID JAMES FISTER (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1.      "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), https://www.consumerreports. org/cro/magazine/ 2015/07/rage-against-robocalls/index.htm.  "Robocalls" are the #1 consumer complaint in America today.

2.      Even as far back as 2012, the Pew Research Center reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis.  Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems.

3.      Robocalls, including text messages, have only increased since the 2012 study. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

4.      "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

5.      This case involves a campaign by Defendants MASSACHUSETTS INSTITUTE OF TECHNOLOGY ("MIT") and EMERITUS INSTITUTE OF MANAGEMENT PTE, LTD. ("EMERITUS") to market educational programs through the use of automated text messages in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

6.      By using an automated telephone dialing system to send thousands of automated telemarketing text messages without first obtaining the prior express written consent of recipients, the defendants violated the TCPA.   By further disregarding wireless telephone users' request that Defendants "Stop" such telemarketing text messages, the defendants further violated the TCPA.

## PARTIES

7.      Plaintiff David Fister is, and at all times mentioned herein was, an individual citizen of the State of Florida.

8.      Defendant Massachusetts Institute of Technology ("MIT") is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 77 Massachusetts Avenue in Cambridge, Massachusetts (02139).

9.      Defendant Emeritus Institute of Management PTE. LTD. ("EMERITUS") is a foreign entity with its principal place of business located in Singapore, Singapore and which maintains offices in East Cambridge, Massachusetts.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

11.     This court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the law of the United States, specifically 47 U.S.C. § 227 *et seq*.

12.     This Court has personal jurisdiction over MIT because it is located within the Commonwealth of Massachusetts and a substantial part of the wrongful acts alleged in this Complaint were committed in Massachusetts.  Similarly, the Court has personal jurisdiction over

EMERITUS based upon their office in this District and on their telemarketing conduct designed

from this district and made into this district for MIT, their client in this District.

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant

Massachusetts Institute of Technology ("MIT") is a resident of the Commonwealth of

Massachusetts and maintains its principal offices in this District.  Venue is also proper in this

District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the

Plaintiff's claims arose in this District, whereas the services that were promoted in the illegal

telemarketing calls that are the subject of this putative class action were provided. Furthermore, the

telemarketing campaign was designed in this District.


**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (47 U.S.C. § 227)**
**TCPA Background**


<u>Calls Made Using an "Automated Telephone Dialing System"</u>

14.     The TCPA regulates, among other things, the use of an automated telephone

dialing system ("ATDS") to make calls or send text messages.  *See* 47 U.S.C. § 227, *et seq*.; *In

re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report

and Order*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     Specifically, the TCPA prohibits the use of an automated telephone dialing

system to make any telemarketing call or send any telemarketing text message to a wireless

number in the absence of an emergency or the prior express written consent of the called party.

*See* 47 U.S.C.  § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2); *In the Matter of Rules &

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831

(F.C.C. 2012).

16.     In 2013, the FCC required prior express consent for all autodialed telemarketing

calls including SMS text messages ("robocalls").   Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer: (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent i.e., tha the
> consumer will receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the consumer
> designates. [] In addition, the written agreement must be obtained "without
> requiring, directly or indirectly, that the agreement be executed as a condition of
> purchasing any good or service. []"

*In the Matter of Rule s and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC

27 FCC Rcd. 1830, 1844 (F.C.C. 2012) (footnotes omitted).

17.      Furthermore, the applicable FCC Orders clarify that "[c]onsumers have the right

to revoke consent, using any reasonable method including orally or in writing.  Consumers

generally may revoke, for example, by way of a consumer-initiated call, directly or in response

to a call initiated or made by a caller, ...".  *See In the Matter of Rule s and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72, 30 FCC Rcd. 7961 ¶

64  (F.C.C. July 10, 2015).

18.     The FCC also recognized that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used."  *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991,* CG Docket No. 02-278, Report and Order,

18 FCC Rcd. 14014, 14115 ¶ 165 (F.C.C. 2003).

19.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B).  The first component of this definition is satisfied when a dialing system has the capacity to call "a given set of numbers" or when "dialing equipment is paired with . . . a database of numbers."  *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, ¶ 133 (2003); *see In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (F.C.C. 2008) (rejecting argument that a dialing system "meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists" and reasoning that "the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective"); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1051 (9th Cir. 2018) (holding that "equipment that made automatic calls from lists of recipients was . . . covered by the TCPA").

20.     "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(12).

## **FACTUAL ALLEGATIONS**

21.     Plaintiff FISTER's telephone number, (530) 643-XXXX, is registered to a cellular telephone service.

22.     Plaintiff FISTER is the subscriber and customary user of said wireless telephone.

23.     Plaintiff FISTER engaged in some internet research regarding Defendant MIT's "Drug and Medical Device Development Program" ("DMDDP").

24.     Plaintiff FISTER did not provide EMERITUS or MIT his prior express written consent to receiving telemarketing text messages.

25.     Thereafter, Defendants EMERITUS and MIT sent Plaintiff FISTER the following SMS Text Messages:

(A)   On September 2, 2019, Defendants sent Plaintiff FISTER a generic solicitation text message thanking him for his interest in the DMDDP Program.

(B)   On September 3, 2019, Defendants sent Plaintiff FISTER a generic solicitation text message following up on a telephone conversation between Defendant's employee or agent Patrick Elloy.

(C)   On September 4, 2019, Defendants sent Plaintiff FISTER a generic solicitation text message promoting "Live Webinar for MIT xPRO's D…"

(D)   On September 7, 2019, Defendants sent Plantiff FISTER a generic text message promoting "MIT xPRO's Drug and Medical … MIT xPRO's Drug and Medical Device Development: A Strate…"

(E)   On September 10, 2019, Defendants sent Plaintiff FISTER a generic text message captioned "Interest in MIT xPRO's Drug an …" which began "Dear David, My name is Patrick Elloy. I am y…."

(F) On September 10, 2019, Defendants sent Plaintiff FISTER a generic text message captioned "Learn from 40+ Industry Exper …" which began "Learn from 40+ Industry Experts on MIT xPRO's Drug and Medi…"

(G)  On September 19, 2019, Defendants sent Plaintiff FISTER a generic text message captioned "David – 7 days remaining to en …." which began "Applications for the Drug and Medical Device Development …"  Plaintiff FISTER is informed and believes that the substance of this solicitation text message was substantially similar to the 7 day reminder received on February 19, 2020, and fully described in Paragraph ___ of this Complaint.

(H)  On September 21, 209, Defendants sent Plaintiff FISTER a solicitation text message captioned "David – 5 days remaining to en…" which began "Applications for the Drug and Medical Device Development …."   Plaintiff FISTER is informed and believes that the substance of this solicitation text message was substantially similar to the other reminders received from Defendants.

(I) On September 23, 2019, Defendants sent Plaintiff FISTER a generic solicitation text message captioned "David – 3 days remaining to en…"   Plaintiff FISTER is informed and believes that the substance of this solicitation text message was substantially similar to  7 day reminders which are identical (except for variations in the bit.ly links) received on November 7, 2019 and February 24, 2020.

(J) On September 25, 2019, Defendants sent Plaintiff FISTER a solicitation text message captioned "David – 1 day remaining to enr …"   Plaintiff FISTER is informed and believes that the substance of this solicitation text message was substantially similar to reminders which are

identical (except for different bit.ly references) received on November 13, 2019, and February

18, 2020, which are more fully described in Paragraph ___ of this Complaint.

(K) On September 30, 2019, Defendants sent Plaintiff FISTER a solicitation text message

captioned "[Video] MIT's Michael Cima Ex…" which began "Dear David, Since you expressed

interest in the new …"

(L) On October 2, 2019, Defendants sent Plaintiff FISTER a solicitation text message

captioned "David – Last day to enroll for M…" which began "Applications for the Drug and

Medical Device Development …"

(M) On November 6, 2019, Defendants sent Plaintiff FISTER a solicitation text message

stating:

> "Hi David,
>
> You are invited to a live information session for the Drug and Medical Device
>
> Development: A Strategic Approach (Online) program by MIT xPRO.
>
> This session will be conducted on Friday, November 08, 2019 at 10:00 AM ET
>
> You may register at:
>
> http:./ bit.ly / 34yYS5J
>
> We hope you'll join us"

Plaintiff FISTER is informed and believes that the referenced bit.ly page redirects visitors to an

advertisement for the DMDD Program.

(N) On November 7, 2019, Defendants sent Plaintiff FISTER a solicitation text message

stating:

> "7 days remaining to enroll in the Drug and Medical Device Development
> Program from MIT xPRO.  Flexible payment options available.  Apply now at
> http // bit . ly …."

(O) On November 13, 2019, Defendants sent Plaintiff FISTER a solicitation text message
stating:

> "1 day remaining to enroll in the Drug and Medical Device Development program
> from MIT xPRO.  Flexible payment options available.  Apply now at http:/./bit.ly
> / 2JWccQ6"

(P) On November 16, 2019, Defendants sent Plaintiff FISTER a solicitation text message
stating:

> "If you missed out on enrolling in the Drug and Medical Device Development
> Program from MIT xPRO, there's still time!  Apply now at http : /./ bit . ly./.
> 2JWccQ6"

(Q)  On November 20, 2019, Defendants sent Plaintiff FISTER a solicitation text
message stating:

> "If you have missed out on applying for the Drug and Medical Device
> Development program from MIT xPRO, there's still time!  Apply now at http: /./
> bit.ly. /202NQXf"

26.     Soon after receiving the afore-described text message on November 20, 2019,
Plaintiff FISTER replied "Stop."

27. However, on February 18, 2020, Defendants sent Plaintiff FISTER a solicitation text message stating:

> "Hi David,
>
> 1 day remaining to register for the Artificial Intelligence: Strategies for Leading Business Transformation online program from Kellog Executive Education. Flexible payment options available.  Register now at:  http:/./bit.ly./.2pP6UiC"

28. On February 20, 2020, Defendants sent Plaintiff FISTER a solicitation text message stating:

> "7 days remaining to enroll in the Drug and Medical Device Development program from MIT xPRO.  Flexible payment options available.  Apply now at http:/./bit.ly./.2JWccQ6"

29. Soon after receiving Defendant's text message on February 20, 2020, Plaintiff FISTER replied "Stop."

30. In response, Defendants sent Plaintiff FISTER a text message stating: "You have successfully been unsubscribed and will receive no further messages."

31. Plaintiff FISTER does *not* allege that this text message (which is often referred to as a "single confirmatory message") is a solicitation, but rather, alleges that this confirmatory message evidences that Defendants knew that Plaintiff FISTER had withdrawn any consent to receive calls made using an ATDS.

32. Yet, the texts continued.

33.     On February 24, 2020, Defendants sent Plaintiff FISTER a solicitation text message stating:

> "3 days remaining to enroll in the Drug and Medical Device Development program from MIT xPRO.  Flexible payment options available.  Apply now at http:/./bit.ly./.2JWccQ6."

34.     Soon after receiving Defendants' text message on February 24, 2020, Plaintiff FISTER replied "Stop."

35.     Nonetheless, on February 26, 2020, Defendants sent Plaintiff FISTER a solicitation text message stating:

> "Hi David,
>
> Last day to enroll in the Drug and Medical Device Development program from MIT xPRO. Flexible payment options available.  Apply now at http:/./bit.ly./.2JWccQ6"

36.     On February 29, 2020, Defendants sent Plaintiff FISTER a solicitation text message stating:

> "Hi David,
>
> "If you missed out on enrolling in the Drug and Medical Device Development program from MIT xPRO, there's still time!  Apply now at: http:/./bit.ly./.2JWccQ6"

37.   On March 1, 2020, at 13:51, Plaintiff FISTER replied "Stop".

38.   The plain text of the text messages received by Plaintiff (cited in the paragraph above) demonstrates that the messages were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him sign up for MIT's course in the "Drug and Medical Device Development program," which is a service.  This message therefore qualified as telemarketing.  47 C.F.R. § 64.1200(f)(12).

39.   Plaintiff FISTER is informed and believes that Defendants sent the text messages described in this complaint using an ATDS.   This belief is supported by the generic nature and repetitive content of the text message advertisements.   Furthermore, many of the text messages appear to be sent at predetermined times based upon when the programs will begin.

40.   The dialing system used also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

41.   Loading a list of telephone numbers into the dialing system and pressing a single command does this.

42.   As an automated dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

43.   The dialing system can do this by inputting a straightforward computer command.

44.   Following that command, the dialing system will sequentially dial numbers.

45.   First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

46.   This would be done without any human intervention or further effort.

47.     As a result, the system that sent text messages to Plaintiff FISTER qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

48.     The calls were not necessitated by an emergency.

49.     Plaintiff's privacy has been violated by the above-described telemarketing robocalls from Defendants. The calls were an annoying, harassing nuisance.

50.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  Plaintiff and the Class Members were also harmed by use of their cell phone battery and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

## MIT'S LIABILITY FOR THE CONDUCT OF EMERITUS

51.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,* CG Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (F.C.C. 1995)

52.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 ¶ 10 (F.C.C. 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or

prerecorded message call sent to a consumer by a third party on another entity's behalf under 47

U.S.C. § 227(b)).

53.     On May 9 ,2013, the FCC confirmed this principle in a Declaratory Ruling

holding that sellers such as MIT may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties in many cases would leave consumers in many cases
> without an effective remedy for telemarketing intrusions.  This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case.  Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment, limiting liability to the
> telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each such marketer separately in
> order to obtain effective relief.  As the FTC noted, because "[s]ellers may have
> thousands of 'independent' marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy."

*May 2013 FCC Ruling,* 28 FCC Rcd. 6599 (¶ 37) (F.C.C. 2013) (internal citations omitted).

54.     More specifically, the May 2013 FCC Ruling held that, even in the absence of

evidence of a formal contractual relationship between the seller and the telemarket, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make

the calls.  28 FCC Rcd. at 6586 (¶ 34).

55.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including

the assertion that a seller's liability requires a finding of formal agency and immediate direction

and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

56.     The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the
> outside sales entity access to information and systems that normally would be
> within the seller's exclusive control, including: access to detailed information

regarding the nature and pricing of the seller's products and services or to the seller's customer information.  The ability by the outside sales entity to enter customer information into the seller's sales or customer systems as well as the authority to use the seller's trade name, trademark and service mark may also be relevant.  It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the authorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28  CC Rcd. at 6592 (¶ 46).

57.     MIT is legally responsible for ensuring that EMERITUS complied with the TCPA, even if MIT itself did not make the calls.

58.     MIT controls the manner and means by which EMERITUS engages in the telemarketing.

59.     MIT provides the telephone numbers to Emeritus to send the text message advertisements.

60.     MIT also reviews and approves the content of the automated texts.

61.     MIT also dictates when and how often the text messages are sent by EMERITUS.

62.     MIT also dictates the specific programs that EMERITUS is allowed to promote through the text messages.

63.     MIT knowingly and actively accepted business that originated through the illegal telemarketing calls from EMERITUS.

64.     Defendants MIT had the ability to prevent unauthorized texts in violation of the TCPA by barring EMERITUS from using automated calling/texting operations, but did not do so.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

66.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

67.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robotexting Class (EMERITUS):** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more telemarketing texts on their cellular telephone from or on behalf of EMERITUS, sent via the same system(s) that EMERITUS or its agents used to send the text messages it sent to Plaintiff Fister.

**Revocation Class (EMERITUS):** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more telemarketing texts on their cellular telephone from or on behalf of EMERITUS, sent via the same system(s) that EMERITUS or its agents used to send the text messages it sent to Plaintiff Fister after the recipient sent EMERITUS at least one message stating "stop".

**Robotexting Class (MIT SUBCLASS):** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more telemarketing texts on their cellular telephone from or on behalf of EMERITUS for MIT, sent via the same system(s) that EMERITUS or its agents used to send the text messages it sent to Plaintiff Fister.

**Revocation Class (MIT SUBCLASS):** All persons in the United States who, within four years prior to the commencement of this litigation until the class is certified, received one or more telemarketing texts on their cellular telephone from or on behalf of EMERITUS for MIT, sent via the same system(s) that EMERITUS or its agents used to send the text messages it sent to Plaintiff Fister after the recipient sent EMERITUS at least one message stating "stop".

68.     Plaintiff FISTER is a member of and will fairly and adequately represent and protect the interests of, these Classes as he has no interests that conflict with any of the class members.

69.     Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

70.     Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their cell phone battery, and the intrusion on their cellular telephone that occupied it from receiving legitimate communications.

71.     This Class Action Complaint seeks injunctive relief and money damages.

72.     The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

73.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

74.     The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

75.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

76.     There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

77.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a) whether Defendant utilized an automatic telephone dialing system to send its texts to the members of the Robotext Class;

(b) Whether agents operating on behalf of Defendant utilized an automatic telephone dialing system in sending text messages to members of the Robotext Class;

(c) whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(d) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(e) whether Defendant's conduct constitutes a violation of the TCPA; and

(f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

78.     As a person who received non-emergency telephone calls using an automatic telephone dialing system without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

79.     As a person who received non-emergency telephone calls using an automatic telephone dialing system after he revoked any prior express consent within the meaning of the TCPA by texting "stop", Plaintiff asserts claims that are typical of each Class member who received calls after texting "stop" to Defendant(s).

80.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff has no interests which are antagonistic to any member of the Classes.

81.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are

committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

82.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

83.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

84.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION
### Statutory Violations of the Telephone Consumer Protection Act
### (47 U.S.C. 227, et seq.) on behalf of the EMERITUS Robotext Class

85.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

86.     Emeritus violated the TCPA by sending, or causing to be sent via an agent, text messages to the cellular telephones of Plaintiff and members of the EMERITUS Robotext Class using an automated dialer without their prior express written consent.

87.     As a result of the Defendant EMERITUS's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robotext Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). Alternatively, they are entitled to treble damages of $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

20

88.     Plaintiff and Robotext Class members are also entitled to and do seek injunctive relief prohibiting the Defendant EMERITUS from using, except for emergency purposes, an ATDS or pre-recorded voice in the future.

**SECOND CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 .S.C. 227, et seq.) on behalf of the EMERITUS Revocation Class**

89.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

90.     Emeritus violated the TCPA by sending, or causing to be sent via an agent, text messages to the cellular telephones of Plaintiff and members of the EMERITUS Revocation Class using an automated dialer after they sent Defendant EMERITUS a text message stating "Stop."

91.     As a result of the Defendant EMERITUS's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Revocation Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). Alternatively, they are entitled to treble damages of $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)

**THIRD CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of the MIT Robotexting Subclass**

92.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

93.     Defendant MIT violated the TCPA by causing to be sent via an agent, text messages to the cellular telephones of Plaintiff using an automated dialer without their prior express written consent.

94.     As a result of the Defendant MIT's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and MIT Robotexting Subclass members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). Alternatively, they are entitled to treble damages of $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

95.     Plaintiff and MIT Robotexting Subclass members are also entitled to and do seek injunctive relief prohibiting the Defendant MIT from using, except for emergency purposes, an ATDS or pre-recorded voice in the future.

**FOURTH CAUSE OF ACTION**
**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. 227, et seq.) on behalf of the MIT Revocation Subclass**

96.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

97.     Defendant MIT violated the TCPA by causing to be sent via an agent, text messages to the cellular telephones of Plaintiff and members of the MIT Robotexting Subclass using an automated dialer after the subscriber sent a message stating "Stop."

98.     As a result of the Defendant MIT's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and MIT Revocation Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). Alternatively, they

are entitled to treble damages of $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting Defendant EMERITUS from using, except for emergency purposes, an ATDS or pre-recorded voice in the future.

B.      Injunctive relief prohibiting Defendant MIT from using, except for emergency purposes, an ATDS or pre-recorded voice in the future.

C.      As a result of each TCPA violations, $500 in damages or $1,500 for each knowing or willful violation;

D.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

E.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: April 22, 2020

PLAINTIFF, on behalf of himself
and others similarly situated,


*/s/ Anthony I. Paronich*
Anthony Paronich
Email:  anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:  (508) 318-8100

Donald E. Petersen (to be admitted *pro hac vice*)
FL Bar No. 0776238
Law Office of Donald E. Petersen
2100 Campbell Street
Palatka, FL 32177
(407) 648 – 9050
E.C.F.  Petersen.NACBA@gmail.com

*Attorneys for Plaintiff*